## IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MADELINE CRUZ** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| **vs.** | : | |
| | : | **NO. 02-CV-4372** |
| **PENNRIDGE REGIONAL** | : | |
| **POLICE DEPARTMENT** | : | |
| **and** | : | |
| **OFFICER TIMOTHY MALONEY** | : | |

### DEFENDANTS PENNRIDGE REGIONAL POLICE DEPARTMENT
### AND OFFICER TIMOTHY MALONEYS' MOTION FOR SUMMARY JUDGMENT

Defendants Pennridge Regional Police Department and Timothy Maloney, by and

through their undersigned attorneys, Marks, O'Neill, O'Brien and Courtney, hereby moves this Honorable

Court for summary judgment in his favor pursuant to Rule 56 of the Federal Rules of Civil Procedure, and

in support thereof, incorporates the Memorandum of Law with the corresponding exhibits,

contemporaneously filed with this Court and in support thereof avers the following:

1.     Plaintiff brought the instant action through the filing of a Second Amended Complaint as a

result of her employment with and eventual termination from the Defendant Pennridge Regional Police

Department.

2.     Plaintiff alleges that she was subjected to gender discrimination and racial

discrimination during the course of her employment.

3.     Plaintiff has not produced sufficient evidence to maintain her causes of action for

discrimination.

4.     Plaintiff alleges Defendant Maloney defamed her during the course of her

employment.

5.     Plaintiff cannot prove a prima facie case for defamation against Defendant

Maloney because his allegedly defamatory statements were true.

6.    Plaintiff has alleged causes of action for intentional infliction of emotional distress and wrongful discharge against the Defendants.

7.    Plaintiff has not proven a prima facie against the defendants for intentional infliction of emotional distress or wrongful discharge.

8.    Defendants are entitled to summary judgment on all counts.

Respectfully submitted,

**MARKS, O'NEILL, O'BRIEN
& COURTNEY, P.C.**

BY:    _____

**KEVIN J. O'BRIEN, ESQUIRE
TIMOTHY D. RAU, ESQUIRE**
ID Nos. 38393/84707
1880 JFK Blvd., Suite 1200
Philadelphia, PA 19103

**Attorneys for Defendants Pennridge
Regional Police Department and
Timothy Maloney**

## IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MADELINE CRUZ** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| **vs.** | : | |
| | : | **NO. 02-CV-4372** |
| **PENNRIDGE REGIONAL** | : | |
| **POLICE DEPARTMENT** | : | |
| **and** | : | |
| **OFFICER TIMOTHY MALONEY** | : | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Pennridge Regional Police Department and Timothy Maloney, by and through their undersigned attorneys, Marks, O'Neill, O'Brien and Courtney, hereby submits this Memorandum of Law in support of his Motion for Summary Judgment.

### I.    STATEMENT OF FACTS

Plaintiff Madeline Cruz filed a Second Amended Complaint on or about July 2, 2002 in which she has alleged numerous counts against Defendants Pennridge Regional Police Department (hereinafter "Pennridge") and Officer Timothy Maloney.   A copy of the Second Amended Complaint is attached hereto as Exhibit "A."

Plaintiff, a former intern and probationary employee of the Pennridge Police Department, alleges that Defendants discriminated against her because of her gender (Count I), discriminated against her because of her race (Count III), discharged her wrongfully (Count III)[1], intentionally caused her emotional distress (Count IV), and defamed her (Count V).  See Exhibit "A."

Plaintiff was originally hired by Pennridge as a temporary, part-time police intern on or about May 29, 1998.  (Exhibit "A," ¶17).  At the end of her internship, Pennridge hired Plaintiff as a part-time police officer, and then when a full time position opened up, Pennridge hired Plaintiff as a full time police officer

---

[1]The Counts alleging racial discrimination and wrongful discharge in the Second Amended Complaint are both denoted as "Count III."

on September 23, 1998.  (Exhibit "A," ¶¶ 20, 21).  At the time of her hiring, Plaintiff was the first female

police officer hired by Pennridge.  (Exhibit "A," ¶22).

As with all Pennridge employees, Plaintiff was subject to a twelve (12) month probationary period.

(See Pennridge Regional Police Department Regulations, attached hereto as Exhibit "B")  The Pennridge

Police Department Police Regulations state that a probationary employee may be terminated from

employment at any time within the probationary period.  (See Exhibit "B," Section 309 (F)(2)).  It also

states in the Police Department Regulations that a probationary period may be extended for an additional

six months at the recommendation of the Chief of Police.  (See Exhibit "B," Section 309 (F)(1)).  Plaintiff

acknowledges that she received a copy of these Department Regulations.  (See Deposition Testimony of

Madeline Cruz, Attached hereto as Exhibit "C," pg. 22-23).

On November 15, 1998, Plaintiff injured her back lifting a manhole cover during the course of her

duties.  (Exhibit "A," ¶27).  Plaintiff advised Lieutenant Sutton of the incident after it occurred.  (See

Memorandum from Lt. Sutton to Chief Dilling, Dated December 11, 1998, Attached hereto as Exhibit

"D").  Plaintiff subsequently missed seven (7) weeks of work.  (Exhibit "A," ¶27).

As a result of Plaintiff' inability to work, other officers in the Department were forced to cover the

Plaintiff's shifts during December 1998 and January 1999.  (See Memoranda from Lt. Sutton to all

officers, Dated December 4, 11, and 21, 1998, attached hereto as Exhibit "E").

On January 11, 1999, Chief Dilling recommended the extension of charging party's probationary

period in accordance with the Regulations for a seven (7) week period which was equal to the time

Plaintiff missed from work.  (See Memorandum from Chief Dilling to Board of Commissioners, Dated

January 11, 1999, attached hereto as Exhibit "F").   Plaintiff did not challenge the extension of her

probationary period.   Plaintiff is unaware of any other Pennridge officer who missed seven (7) weeks of

works during the officer's probationary period.  (Exhibit "C," pg. 148).

Plaintiff subsequently returned to duty in January 1999.  On May 19, 1999, Plaintiff

reported to work two hours late, and one of her co-workers, Officer Roesner, worked two extra hours until

she did report for work. (See Memorandum from Plaintiff to Sgt. Apgar, Dated May 19, 1999, Attached hereto as Exhibit "G"). Plaintiff's supervisor, Sgt. Apgar, subsequently recommended that the Plaintiff not receive any punishment beyond a written reprimand for her inability to report to work on time. (See Memorandum from Sgt. Apgar to Lt. Sutton, Dated May 25, 1999, Attached hereto as Exhibit "H"). Chief Dilling then issued a written reprimand to the Plaintiff in which he advised her of her right to appeal the reprimand. (See Memorandum from Chief Dilling to Officer Cruz, Dated May 26, 1999, Attached hereto as Exhibit "I").

On July 9, 1999, Plaintiff failed to pass her annual firearms qualification. (See Memorandum from Lt. Sutton to Chief Dilling, Dated August 5, 1999, Attached hereto as Exhibit "J"). Plaintiff inability to handle her weapon safely had been previously identified as a concern. When she qualified in October 1998, Pennridge's firearms instructor, Sergeant Blake, noted that Plaintiff was "unfamiliar with the weapon and needed constant reminder to de-cock the weapon." (See Individual Firearms Report, Dated October 28, 1998, Attached hereto as Exhibit "K"). As a result of her failure to qualify in July 1999, Plaintiff was ordered to re-qualify in September 1999. (See Exhibit "J"). Plaintiff again failed to shoot a qualifying score on September 24, 1999. (See Individual Firearms Report Dated September 24, 1999, Attached hereto as Exhibit "L"). It was not until October 25, 1999 that the Plaintiff was able to shoot a qualifying score with her firearm. (See Individual Firearms Report, Dated October 25, 1999, Attached hereto as Exhibit "M").

In addition to being unable to shoot a qualifying score with her firearm during the summer of 1999, Plaintiff engaged in a pattern of conduct which violated Departmental policy. On August 3, 1999, Plaintiff failed to provide the requisite two (2) hours notice of sick leave to the Department and failed to show for a scheduled court hearing without providing notice to the court. (See Memorandum from Sgt. Apgar to Chief Dilling, Dated August 6, 1999, Attached hereto as Exhibit "N"). Plaintiff's failure to provide notice of her sick leave more than two hours prior to the start of her shift violated Departmental policies. (See Exhibit "N"). Plaintiff's failure to request a continuance of the court hearing scheduled for that day

resulted in the case being dismissed.  (See Exhibit "N").  Plaintiff's failure to notify the court of her

inability to attend the hearing also violated Departmental policy.  (See Exhibit "N").

At the end of August 1999, Plaintiff vacationed in Puerto Rico.  Upon returning to work after her

vacation, Plaintiff advised Defendant Maloney that she received a citation from the police.  (See

Memorandum from Officer Maloney to Sgt. Apgar, Attached hereto as Exhibit "O").  Pennridge's

regulations prohibit conduct unbecoming an officer.  (See Departmental Regulations, Attached hereto as

Exhibit "P," Section 303).   "Unbecoming conduct" includes "violations of the law."  (Exhibit "P," Section

303).  Officer Maloney then informed Plaintiff's supervisor that she had violated the law while in Puerto

Rico.  (Exhibit "O").

Simultaneously, Defendant Maloney expressed concern to Sergeant Apgar that the Plaintiff had not

completed her requisite Patrol Log nor had she completed several report.  (See Memorandum from Officer

Maloney to Sgt. Apgar, Attached hereto as Exhibit "Q").  On September 9, 1999, Defendant Maloney had

been unable to locate the Plaintiff's Patrol Log and had also been unable to locate several accident reports,

including one involving a school bus.  (See Exhibit "Q").

In response to Defendant Maloney's complaints, Sergeant Apgar directed Plaintiff to provide

written explanations regarding the missing patrol log and reports and to provide a written explanation of

the incident which took place on vacation along with copies of the citations.  (See Memorandum from Sgt.

Apgar to Officer Cruz, Dated September 14, 1999, Attached hereto as Exhibit "R").  Additionally, Sgt.

Apgar instructed the Plaintiff to provide a written response to her charge of harassment.  (See Exhibit "R").

With regard to her charge of harassment, Plaintiff was to provide the names of officers an employees

involved as well as the specific behavior and incidents the support her allegations.  (See Exhibit "R").

Plaintiff provided a written response to Sergeant Apgar in a memorandum dated "9-9-99."  (See

Memorandum from Officer Cruz to Sgt. Apgar, Attached hereto as Exhibit "S").  With regard to the

incomplete incident reports, Plaintiff admitted that she failed to record the incident numbers prior to

leaving on the date in question in what she classified as an "oversight."  (See Exhibit "S").

With regard to the citations received in Puerto Rico, Plaintiff stated the she was stopped for a minor traffic violation and a verbal exchange between her passenger and the investigating officer ensued. (See Exhibit "S," pg. 2). Plaintiff received a total of four (4) citations for the incident. (See Exhibit "S"). Plaintiff claims that she left the citations with a friend in Puerto Rico, and was therefore unable to produce copies of the citations. (Exhibit "S," pg. 2). At the scene of the incident, Plaintiff identified herself as a member of the Pennridge Regional Police Department. (See Exhibit "S," pg. 3).

In the memo, Plaintiff complained of five specific incidents which she believed amounted to harassment. Plaintiff complained that prior to writing two memos regarding her conduct, Defendants Maloney stated to her that the department would never fire her because she is Hispanic and because she is a woman. (Exhibit "S," pg. 3). The second incident cited by Plaintiff as harassment involved Officer Karcher. (Exhibit "S," pg. 3). Plaintiff claims that on August 10, 1999, after she informed Officer Karcher that the Chief called he at home, Officer Karcher responded that the Chief "wanted a little something" from her. (Exhibit "S," pg. 3). Plaintiff further complained that on July 11, 1999, Defendant Maloney commented that Plaintiff had received special equipment and that she was the "biggest fucking bitch in the department." (Exhibit "S," pg. 3). The fourth incident with which Plaintiff took issue involved Sergeant Blake. (Exhibit "S," pg. 4). Officer Robinson, a female officer from a neighboring police department, was alleged to have had a relationship with her one of her superior officers. (Exhibit "S," pg. 4). Plaintiff further alleged that Sergeant Blake commented that they should keep an eye on Plaintiff when she is in Lt. Sutton's office to make sure that she does not "do" the Lieutenant. (Exhibit "S," pg. 4).

Plaintiff lastly cites to a photograph/cartoon in the squad room which she believed to be offensive and inappropriate. (Exhibit "S," pg. 3). Plaintiff states that she gave the cartoon to Lt. Sutton and did not feel it was necessary to file a complaint. (Exhibit "S," pg. 4).

After receiving Plaintiff's memorandum, Lt. Sutton sent a memorandum to Chief Dilling which details the actions he took with regard to the photograph/cartoon referenced by Plaintiff. (See Memorandum from Lt. Sutton to Chief Dilling, Dated September 20, 1999, Attached hereto as Exhibit

"T"). Lt. Sutton indicated that an employee, other than Plaintiff, had originally brought the cartoon to his

attention. (See Exhibit "T"). Lt. Sutton then removed the cartoon from the squad room. (See Exhibit "T").

Lt. Sutton spoke with Sgt. Blake regarding the inappropriateness of the cartoon. (See Exhibit "T," pg. 2).

Several weeks after the cartoon was found in the squad room, Lt. Sutton met with Plaintiff to discuss a

rumor that she stated that she did not have to follow a directive to go through the firearms qualifications

course again. (See Exhibit "T," pg. 2). Lt. Sutton confronted Plaintiff regarding her firearms

qualifications, and she responded by stating that she was being singled out and was contemplating

reporting that she was being harassed. (Exhibit T," pg. 2). When asked to cite an example, Plaintiff

responded by mentioning the photograph/cartoon. (Exhibit "T"). This meeting was the first time that

Plaintiff had complained to the Lieutenant about the cartoon. (Exhibit "T," pg. 2). Lt. Sutton then advised

her that she could file a formal complaint if she felt se was being harassed. (Exhibit "T," pg. 2).

   With regard to Plaintiff's allegations concerning Sergeant Blake, Sergeant Blake denied ever

making the comments about Plaintiff and the Lieutenant. (See Memorandum from Sgt. Blake to Chief

Dilling, Dated September 20, 1999, Attached hereto as Exhibit "U"). Likewise, Officer Karcher submitted

a memorandum in which he denied commenting that the Chief "wanted a little something" from the

Plaintiff. (See Memorandum from Officer Karcher to Chief Dilling, Dated September 20, 1999, Attached

hereto as Exhibit "V"). Defendant Maloney also prepared a memorandum in which he questioned

Plaintiff's story that he stated that she would never be fired and that she was a "bitch." (See Memorandum

from Officer Maloney to Sgt. Apgar, Dated September 22, 1999, Attached hereto as Exhibit "W").

Defendant Maloney did not deny making these comments but stated in the memorandum that he only made

them after Plaintiff called him "an asshole." (See Exhibit "W").

   After reviewing the Plaintiff's response to the missing patrol logs accusation, Lt. Sutton

recommended to Chief Dilling discipline Plaintiff by issuing a written reprimand. (See Memoranda from

Lt. Sutton to Chief Dilling, Dated 9/25/99 and 9/28/99, Attached hereto as Exhibit "X"). Lt. Sutton's

recommendation was made based on the Plaintiff's inability to adequately explain why she had not

completed her patrol logs and incident reports.  (See Exhibit "X").  Chief Dilling subsequently issued a

written reprimand to the Plaintiff.  (See Memorandum from Chief Dilling to Officer Cruz, Dated October

1, 1999, Attached hereto as Exhibit "Y").

Despite leaving the citations in Puerto Rico with a "friend," Plaintiff was unable to obtain copies

and produce them to her superiors.  (See Memorandum from Officer Cruz to Sgt. Apgar, Dated October 8,

1999, Attached hereto as Exhibit "Z").

Sergeant Apgar, Plaintiff's immediate supervisor, prepared a Quarterly evaluation of the Plaintiff's

job performance on November 4, 1999, and Lt. Sutton forwarded this evaluation to Chief Dilling.  (See

Memorandum from Lt. Sutton to Chief Dilling, Dated November 5, 1999, Attached hereto as Exhibit

"AA").  This review was the final review of the Plaintiff's probationary employment period.  Sergeant

Apgar indicates in his review that he was concerned with the Plaintiff's marksmanship and general

firearms handling.  (See Exhibit "AA").  Sergeant Apgar also indicated that he had received performance-

related complaints from every member of his platoon regarding the Plaintiff.  (See Exhibit "AA").

Additionally, Sergeant Apgar noted that the Plaintiff refused to accept the "chain of command" in the

Department.  (See Exhibit "AA").

Lt. Sutton then relayed Sgt. Apgar's concerns to Chief Dilling, and noted that he had witnessed

Plaintiff's performance level plummet in the last 3-5 months.  (See Exhibit "AA").  Lt. Sutton noted that

although she was permitted to respond to Sgt. Apgar's review, she had chosen not to provide a response.

(See Exhibit "AA").  Lt. Sutton explained that the Plaintiff's job performance weaknesses had resulted "in

the need for continuous supervisory intervention which at this point in her probation should be considered

unacceptable."  (See Exhibit "AA").

As a result of the evaluation, Chief Dilling advised the Plaintiff that her employment with

Pennridge was being terminated.  (See Memorandum from Chief Dilling to Officer Cruz, Dated November

9, 1999, Attached hereto as Exhibit "BB").  In the memo, Chief Dilling cites the following reasons for her

termination: (1) overall unsatisfactory performance evaluations during the Plaintiff's probationary period;

(2) a disciplinary history that included four (4) written reprimands and one counseling session; and (3) an

unsuccessful level of firearms proficiency.  (See Exhibit "BB").

### II    LEGAL ARGUMENT

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure governing summary judgment provides that:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the Affidavits, if any, show that there
> is no genuine issue as to any material fact and that moving party is entitled to judgment as a
> matter of law.

Fed.R.Civ.P. 56(c).

As interpreted by the court in <u>Celotex v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548 (1986):

> . . . [T]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate
> time for discovery and upon motion, against a party who fails to make a showing sufficient to
> establish the existence of an element essential to that party's case, and on which that party would
> bear the burden of proof at trial.  In such a situation, there can be no "genuine issue as to any
> material fact" since a complete failure of proof concerning an essential element of the non-moving
> party's case necessarily renders all other facts immaterial.  The moving party is "entitled to
> judgment as a matter of law" because the non-moving party has failed to make a sufficient showing
> on an essential element of her case with respect to which she has the burden of proof.

<u>Celotex</u>, 477 U.S. at 423-24, 106 S.Ct. at 2553.

The moving party bears the initial responsibility of stating the basis for its motions and identifying

those portions of the record which demonstrate the absence of a genuine issue of material fact.  The

movant can discharge that burden by "showing ... that there is an absence of evidence to support the non-

moving party's case."  <u>Celotex</u>, 477 U.S. at 323 and 325, 106 S.Ct. at 2548 and 2554.

Issues of fact are "'genuine' only if a reasonable jury, considering the evidence presented, could find

for the non-moving party." <u>Childers v. Joseph</u>, 842 F.2d 689, 693-694 (3rd Cir. 1988) (citing <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, (1986)).  Material facts are those which will affect the outcome of

the trial under governing law.  <u>Anderson</u>, *supra*, 477 U.S. at 248.  In determining whether an issue of

material fact exists, the court must consider all evidence in the light most favorable to the non-moving

party.  <u>White v. Westinghouse Electric Company</u>, 862 F.2d 56, 59 (3rd Cir. 1988); <u>Anderson</u>, *supra*, 477

U.S. at 249 (citing <u>Improvement Company v. Munson</u>, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)).

As explained by the Supreme Court of the United States in <u>Anderson v. Liberty Lobby, Inc.</u>, supra, while a judge's role at the summary judgment stage is not to weigh the evidence and determine the truth of the matter:

> Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there was literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

> <u>Id.</u>

Summary judgment is appropriate when the evidence put forth by the non-movant is merely colorable or is not significantly probative of the issues. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 US 242, 249-50 (1986). In the matter at hand, this Honorable Court's role is to make the preliminary inquiry as to whether Plaintiff raises genuine issues of material fact which must be submitted to a jury. In the instant case, even if the facts are read in a light most favorable to Plaintiff, Moving Defendant is entitled to summary judgment as a matter of law.

**B.      Plaintiff Has Not Produced Sufficient Evidence Which Would Permit  a Reasonable Jury Finding of Sexual Harassment**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). <u>Meritor Savings Bank, FSB, v. Vinson</u>, 477 U.S. 57, 62 (1986). The Court has held that a plaintiff "may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive working environment." <u>Meritor</u>, 477 U.S. at p. 66.

The Supreme Court has repeatedly addressed the issue of what constitutes sexual harassment. Most

recently the Court enunciated in <u>Clark County School District v. Breeden</u>,  532 U.S. 268, 121 S.Ct. 1508,

149 L.Ed.2d 509 (2001), that:

> "...sexual harassment is actionable under Title VII only if it is so 'severe or pervasive' as to 'alter
> the conditions of [the victim's] employment and create an abusive working environment.'  <u>Faragher</u>
> <u>v. Boca Raton</u>, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (Quoting <u>Meritor</u>
> <u>Savings Bank, FSB v. Vinson</u>, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 l. Ed.2d 49 (1986) (some
> internal quotation marks omitted)).  See also <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742,
> 752, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (Only Harassing conduct that is 'severe or pervasive'
> can produce a 'constructive alteration in the terms or conditions of employment); <u>Oncale v.</u>
> <u>Sundower Offshore Services, Inc.</u>, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (Title
> VII forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's
> employment).  Workplace conduct is not measured in isolation; instead, 'whether an environment is
> sufficiently hostile or abusive' must be judged by looking at all of the circumstances,' including the
> 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or
> humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's
> work performance.'  <u>Faragher v. Boca Raton</u>, supra, at 787-788, 118 S.Ct. 2275 (Quoting <u>Harris v.</u>
> <u>Forklift Systems, Inc.</u>, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).  Hence, '[a]
> recurring point in our opinions is that simple teasing, offhand comments, and isolated incidents
> (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions
> of employment.'" <u>Faragher</u>, supra, at 788, 118 S.Ct, 2275 (Citation and quote marks omitted)."

<u>Clark County School District,</u> at pg. 270

In order to establish a prima facie hostile work environment claim to hold an employer liable, a

plaintiff must show that:

> (1) the employee belongs to a protected class; (2) the employee was subject to harassment, that is,
> unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a
> sexual nature; (3) the harassment was based on sex; (4) the harassment affected a term, condition,
> or privilege of employment; and, (5) the employer knew or should have known of the charged
> sexual harassment and failed unreasonably to take appropriate corrective action."

<u>Bibby v. Coca Cola Bottling Co.</u>, 85 F.Supp. 509, 515 (E.D. Pa. 2000).

In the instant case, the Plaintiff has not produced sufficient evidence which would allow a

reasonable fact finder to conclude that the plaintiff has established a prima facie hostile work environment

claim.  Plaintiff has failed to put forth evidence that he was subjected to "unwelcome sexual advances,

requests for sexual favors, or other verbal or physical conduct of a sexual nature."  Plaintiff has also failed

to put forth evidence that the alleged harassment occurred because of his gender.  Moreover, Plaintiff has

not produced evidence that a "term, condition, or privilege of employment" was affected by any conduct of

the defendants.

      **1.**      **Plaintiff Has Failed to Identify Any Actions Which Rise to the Level of Harassment.**

In order to establish a claim for sexual harassment, a plaintiff must identify some conduct which qualifies as harassment. As has been stated, "mere 'offhand comments and isolated incidents' are not sufficient to set forth a claim for hostile work environment, for in order to state such a claim, the conduct alleged 'must be extreme to amount to a change in the terms and conditions of employment.'" Bauder, at pg. 4; Citing Faragher v. City of Boca Raton, 118 S.Ct. 2275, 2283-84 (1998). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment- an environment that a reasonable person would find hostile or abusive– is beyond Title VII's purview." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998). Justice Scalia noted that "we have always held that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace – such as male-on-male horseplay or intersexual flirtation– for discriminatory 'conditions of employment.'" Id. The Court has clearly stated that a "mere offensive utterance" will not rise to the level of sexual harassment. Faragher, 524 U.S. at 788. Plaintiff has failed to put forth any evidence that would permit a reasonable fact finder to conclude that the plaintiff was subjected to any conduct which amounts to Title VII harassment.

Just because a comment is offensive does not mean that it rises to the level of sexual harassment. See Faragher, 524 U.S. at 788; See Also Clark County School District v. Breeden,532 U.S. at 270.

Plaintiff will likely point to several independent incidents which occurred over the course of her employment as amounting to sexual harassment. As Plaintiff reported to the department, she believed that she had been subjected to five separate incidents which she believed rose to the level of harassment. (See Exhibit "S," pg. 3-4). First, Defendant Maloney stated to Plaintiff that she would never be fired because she is Hispanic and because she was a woman. (See Exhibit "S," pg. 3). Plaintiff also claims that

Defendant Maloney expressed a distaste for special treatment she received with regard to equipment. (See Exhibit "S," pg. 3).

Plaintiff also claims that Officer Karcher implied a sexual innuendo when he commented to her that the Chief called her at home because he "wanted a little something from her." (See Exhibit "S," pg. 3). Along the same lines, Plaintiff alleges that Sergeant Blake told the Plaintiff that they would have to keep an eye on her when she was in the Lieutenant's office so that she would not "do" the Lieutenant. (See Exhibit "S," pg. 3). Sergeant Blake's comment was allegedly made in reference to an officer in a neighboring police department who had a relationship with her superior officer. (Ex. "S," pg. 3).

Although these comments may be offensive, all of the comments, even when viewed in the aggregate are the mere offhand comments that the Supreme Court has repeatedly ruled do not rise to the level of sexual harassment.

Plaintiff will also likely point to the photograph/cartoon which depicted Officer Rickabaugh as amounting to sexual harassment. (See Exhibit "S," pg. 4). Although the photographs/cartoons may be offensive, they are not harassment but are mere horseplay. The cartoons complained of by the Plaintiff also do not rise to the level of illegal harassment.

All of the incidents cited by the Plaintiff as harassment are isolated in nature. Although they may be offensive, even when viewed in the aggregate, cannot be ruled to amount to a hostile work environment. Accordingly, Plaintiff's charge of gender discrimination must fail.

####    2.    Plaintiff Has Failed to Produce Any Evidence Which Would Permit a Reasonable Fact finder to Conclude Defendants Acted Against the Plaintiff Because of Her Gender.

The purpose of Title VII is to prevent "disparate treatment of men and women in employment." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78 (1998). "Title VII does not prohibit all physical or verbal harassment in the workplace; it is directed only at 'discrimination...because of...sex.'" Id. at 80. The Court stated that "the critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which member of the other sex are

not exposed.  Id. at 80.  "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue...actually constituted 'discrimination...because of ...sex'" Id. at 81.

A Plaintiff alleging sexual harassment must show that the harassing conduct was a result of the Plaintiff's gender because Title VII is premised on eliminating *discrimination,*" and thus "inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit."  Holman v. State of Indiana, 211 F.3d 399, 403 (7th Cir.2000).

Plaintiff cannot prove that any of the aforementioned incidents which she claims amount to the level of sexual harassment occurred because she is a woman.  With regard to the  photographs/cartoons, the male officers at Pennridge were also featured in these photographs/cartoons.  Because both males and females were featured in the cartoons, Plaintiff cannot show that she appeared in them because she is a woman.

**3.    Plaintiff Has Failed to Show That Her Employer Should Be Liable for the Alleged Harassment.**

In order for an employer to have liability for a supervisor's sexual harassment of an employee, the harassed employee must prove that the harassment was either performed in the scope of employment, or that the employer was negligent in that it knew or should have known of the alleged harassment. See Burlington Industries v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).   "The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." Id., at 757, 118 S.Ct, at 2267.  However, a plaintiff may establish employer liability based on agency if it is shown that the supervisor takes a tangible employment action against the subordinate.  Id.,, at 760, 118 S.Ct at 2268.  "A tangible employment action constitutes a significant change in employment status, such as a hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Id.

In cases such as the instant one, where the Plaintiff was not subjected to a tangible employment

action by the supervisor, the employer may raise an affirmative defense to liability, subject to proof by a preponderance of the evidence. Id. at 765, 118 S.Ct. at 2270. The affirmative defense comprises two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. The existence of an employer's sexual harassment policy may be addressed when litigating the first element of the defense. Id.

Plaintiff did not complain of any conduct that she believed to be harassment until she had been accused of conduct which violated Departmental policies by Lt. Sutton. (See Exhibit "T"). Once the issues were raised by Plaintiff, Lt. Sutton took adequate measures to address her concerns. The officers who were accused of the offensive conduct were instructed to provide written explanations of their conduct. (See Exhibits " U" -"W"). Additionally, once Lt. Sutton learned of the cartoon featuring Officer Rickabaugh from another female employee, he discussed the inappropriateness of the cartoon with Sergeant Blake. (See Exhibit "T").

Defendant Pennridge cannot be liable for sexual harassment with regard to the Plaintiff because the Department reasonably took corrective actions once the Department's supervisors learned of Plaintiff's complaints relevant to the alleged harassment. See Burlington Industries v. Ellerth, 524 U.S. 742. Lt. Sutton and Chief Dilling addressed the Plaintiff's allegations with the officers involved and no further incidents occurred. Accordingly, Plaintiff cannot maintain a cause of action for gender discrimination and sexual harassment and summary judgment is appropriate.

**C.     This Plaintiff Has Failed to Establish A Prima Facie Case Of Discrimination And Therefore The Plaintiff's Claim Should Be Dismissed.**

In order to establish a prima facie case of disparate treatment under Title VII and the PHRA, the plaintiff must establish (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated similarly-situated males more

favorably.  <u>See Grande v. State Farm Mutual Automobile Ins. Co.</u>, 83 F.Supp.2d 559 (E.D.Pa. 2000)(citing

<u>Ezold v. Wolf, Block</u>, 983 F.2d 509, 523 (3d Cir. 1992)).  If the plaintiff establishes a prima facie case, the

burden of production then shifts to the defendant to articulate legitimate, non-discriminatory reasons for

the adverse employment action.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817 (1973).

If the defendant does so, the burden of persuasion rests with the plaintiff to prove that the proffered reasons

are not "true reasons" for its action, but are merely a pretext for intentional discrimination.  <u>Jones v.</u>

<u>WDAS FM/AM Radio Stations</u>, 74 F.Supp.2d 461 (E.D.Pa. 1999)(citing <u>Olsen v. General Elec.</u>

<u>Astrospace</u>, 101 F.3d 947, 951 (3d Cir.1996)).   Under this framework, "the plaintiff must first produce

sufficient evidence to convince a reasonable fact finder of all elements of a prima facie case of

discrimination."  <u>Long v. Thomson Industries</u>, 2000 WL 1586078, p. 4 (E.D.Pa.); Citing <u>Reeves v.</u>

<u>Sanderson Plumbing Prod. Inc.</u>, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed. 105 (2000).

     In the instant case, the plaintiff's claim must be dismissed because she cannot establish a prima

facie case of gender or racial discrimination.  To begin with, the plaintiff cannot prove that she performed

her job satisfactorily.  Even assuming, for the sake of arguments only, that the plaintiff can convince a

reasonable fact finder that she did perform her job satisfactorily, summary judgment is still appropriate

because that plaintiff cannot prove that similarly-situated males were treated differently.   Likewise,

Plaintiff cannot show that she was treated differently than any similarly-situated, non-Hispanic employees.

    **1.**        **Plaintiff's Poor Job Performance**

     As Chief Dilling noted in his termination memorandum to Plaintiff, she had on overall

unsuccessful probationary period.  (See Exhibit "BB").  Plaintiff received unsatisfactory performance

reviews. (See Exhibit "B").  Also, Plaintiff received four separate written reprimands and one counseling

session during her probationary period.  (See Exhibit "BB").  Plaintiff reprimands were for her tardiness

for work, her failure to notify the court of her inability to attend a scheduled hearing, and her failure to

complete accident reports in a timely fashion.  (See Exhibit "BB").  Plaintiff was also unable to explain

and produce evidence that the four (4) citations she received in Puerto Rico were not more serious than

traffic violations.   Any violation of the law is a violation of the Department's policy regarding the conduct of its officers.

In addition to the aforementioned struggles by the Plaintiff, she was unable to safely and competently handle her firearm.  (See Exhibit "BB").  Plaintiff had difficulty shooting her firearm adequately in a accordance with departmental policies.  (See Exhibits "K" - "M").  Moreover, Plaintiff did not handle her firearm safely, as she had to be reminded to "de-cock" her weapon during one of her training sessions. (See Exhibit "K").

Plaintiff cannot prove that she performed her job satisfactorily and therefore cannot maintain a cause of action against the Defendants for discrimination.

**2.       Plaintiff Has Failed to Show that Similarly Situated Males were Treated More Favorably**

Plaintiff may claim that she was treated differently than other similarly situated non-Hispanic males with regard to her employment, specifically in reference to the extension of her probationary period.  Plaintiff has failed to produce any evidence that a similarly-situated probationary employee missed seven weeks of his probationary period and did not have his probationary period extended.  Likewise, Plaintiff has failed to produce any evidence that any other probationary employee had as many problems with his firearms proficiency and was afforded treatment different from that which the Plaintiff received.  Plaintiff has also failed to produce any evidence that a probationary employee who received as many written reprimands as Plaintiff did received more favorable treatment.

Because Plaintiff has not met her burden of proving that she was treated less favorably than similarly-situated employees who were not members of a protected class, her claims of discrimination must fail.  Accordingly, summary judgment is appropriate with regard to Plaintiff's discrimination claims.

**D.       Plaintiff has failed to produce facts to support a prima facie case of defamation.**

In an action for defamation, a plaintiff must prove: (1) the defamatory character of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of the meaning; (5) understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm to the plaintiff; and (7) abuse of a conditionally privileged occasion. Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648, 651-652 (Pa. Super. 1999). It is the court's function to determine if a communication is capable of defamatory meaning. Id.

Truth is an absolute defense to defamation. Bob v. Kraybill, 511 A.2d 1379, 1380 (Pa.Super.Ct. 1986). The truth required to avoid liability for defamation is not complete truth, but rather substantial truth. Killian v. Doubleday & Co., 79 A.2d 657, 660 (Pa. 1951).

Plaintiff alleges that Defendant Maloney defamed her when he reported to Sergeant Apgar that Plaintiff received citations while on vacation in Puerto Rico. (Exhibit "A," ¶ 64). Plaintiff further alleges that Defendant Maloney's allegations that Plaintiff did not complete her patrol logs or incident reports in a timely manner was also defamatory. Id. Defendant Maloney's alleged defamatory communications were contained in two separate memoranda to Sergeant Apgar. (See Exhibits "O" & "Q").

Defendant Maloney's communications cannot be defamatory because they are true. Plaintiff, by her own admission, received four (4) citations while on vacation in Puerto Rico. (See Exhibit "S"). To date, Plaintiff has not produced the actual citations.

With regard to Defendant Maloney's communications regarding Plaintiff's failure to complete her patrol log and complete her incident reports, Plaintiff admits that she failed to complete her patrol log and that it was an oversight on her part. (See Exhibit "S"). Likewise, Plaintiff admitted that she did not complete her incident reports on the date in question. (See Exhibit "S").

Because Defendant Maloney's concerns which were raised in his memorandum to Sergeant Apgar were true, Defendant Maloney cannot be held liable for defamation. Accordingly, Summary judgment with regard to Count V of the Plaintiff's Second Amended Complaint is appropriate.

**E.      Officer Timothy Maloney is Entitled to Qualified Immunity.**

Public officials are entitled to qualified immunity from liability for actions that do not "violate clearly established statutory or constitutional principles of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In that regard, it shields public officials from civil damages liability.  Mainstream Loudon, 2 F.Supp. 2d at 790; See, also, Leatherman v. Terrent County Narcotics Intel. and Coordination Unit, 507 U.S. 163, 165 (1993) (individuals enjoy absolute and qualified immunity under 42 U.S.C. §1983).  This determination is a matter of law to be determined by the Court. Burke v. Mahanoy City, 1999 W.L. 116, 291, *7 (E.D. Pa. 1999).

Plaintiff has not alleged any conduct against Defendant Maloney which clearly violates an established statutory or constitutional principle.  The Plaintiff's allegations against Defendant Maloney are essentially twofold.   Plaintiff alleges that Defendant Maloney reported her conduct to his superiors, and she alleges that he made certain comments to her either because she is a woman or because she is Hispanic.

As previously discussed, Defendant Maloney's memoranda to Sergeant Apgar regarding Plaintiff's conduct contained truthful statements.  It is unfathomable how Defendant Maloney's motives in reporting Plaintiff's conduct could be illegal if the conduct that he reported was based in fact.

With regard to Defendant Maloney's miscellaneous comments to Plaintiff, none of these comments violate any clearly established statutory or constitutional principle.  Plaintiff alleges that Defendant called her a "bitch" and that he stated that she would never get fired because she was Puerto Rican and because she was a woman.   These comments, although they may be considered rude or offensive, do not violate any clearly established statutory or constitutional principle.

Because Plaintiff has not produced any evidence that Defendant Maloney violated any clearly established principle or statute applicable to her, Defendant Maloney is entitled to qualified immunity and summary judgment with regard to all claims against him is appropriate.

**F.    Plaintiff has not produced facts which support her claim of wrongful discharge.**

Plaintiff alleges in her Second Amended Complaint that she is entitled to relief for wrongful discharge. (Ex. "A," ¶¶58, 59). In order to prove a claim for wrongful discharge, a Plaintiff must show that (1) she was an at-will employee, (2) that the Defendant was motivated by a specific intent to harm the employee, and (3) the discharge violates a clear mandate of public policy. See Rossi v. Pennsylvania State Univ., 489 A.2d 828, 832 (Pa. Super. 1985).

In the instant case, the Plaintiff has not produced any evidence to show that the Defendants' actions were motivated by a specific intent to harm the Plaintiff. Plaintiff cannot prove a cause of action for wrongful discharge against Defendant Maloney because he did not employ her as an at-will employee and the record is devoid of any evidence that he had authority to terminate her employment. Moreover, as previously discussed, Officer Maloney's actions toward the Plaintiff essentially consist of two memoranda that he submitted to her supervisor regarding her unbecoming conduct and her inability to follow departmental procedures. The issues contained in both of the memoranda were motivated by the facts rather than an improper purpose.

With regard to a violation of a clear mandate of public policy, Plaintiff cannot prove this element. Although Plaintiff will argue that there is a clear mandate against gender and racial discrimination, Plaintiff has not proven that Defendants have discriminated against her for either of these reasons. As previously discussed, Plaintiff was discharged by Defendant Pennridge because of her inability to perform her job duties satisfactorily and therefore cannot prove a case of discrimination against Defendant Pennridge. Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648, 651-652.

Accordingly, Defendants respectfully request that Defendants Motion for Summary Judgment be granted with respect to Plaintiff's claim for wrongful discharge.

G.    **Plaintiff has not produced sufficient evidence to prove a claims for intentional**

**infliction of emotional distress.**

Plaintiff has alleged in her Second Amended Complaint that she is entitled to damages for Intentional Infliction of Emotional Distress from the Defendants. (Ex. "A," ¶61, 62). Plaintiff has failed to prove the minimal elements necessary to show intentional infliction of emotional distress.

Although the Pennsylvania Supreme Court has never expressly recognized a cause of action for intentional infliction of emotional distress, the court has cited Section 46 of The Restatement of Torts as setting forth the minimum elements necessary to sustain such a cause of action. See <u>Kazatsky v. King David Memorial Park</u>, 515 Pa. 183, 527 A.2d 650 (2000). [2]

Although the Pennsylvania courts have not specifically adopted Section 46, Pennsylvania courts have held that liability for intentional infliction of emotional distress is limited to those cases in which the conduct complained of is extreme and outrageous. <u>Dawson v. Zayre Department Stores</u>, 346 Pa. Super. 357, 499 A.2d 648 (1985) (holding that racial epithets, without intent to cause bodily harm are not outrageous circumstances to sustain a cause of action). It is for the court to determine whether a defendant's conduct can be reasonably regarded as so extreme and outrageous so as to permit recovery for alleged intentional infliction of emotional distress. <u>Id.</u> The requisite "intention" which one must display for liability to be imposed is knowledge on the part of the insured that severe emotional distress is substantially certain to be produced by this conduct. <u>Hoffman v. Memorial Osteopathic Hospital</u>, 342 Pa. Super. 375, 492 A.2d 1382 (1985).

---

[2]Section 46 of The Restatement (Second) of Torts provides in part:

"(1) one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress..." The availability of recovery under Section 46 is circumscribed in the comments to Section 46. Recovery is limited to "(d) extreme and outrageous conduct." Restatement (Second) of Torts, Section 46, Comment d. In order to prove liability, the conduct must be motivated by "malice." <u>Id.</u> "Liability has been found only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." <u>Id.</u> Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, petty oppressions, or other trivialities." <u>Id.</u>

In the instant case, Plaintiff cannot sustain a cause of action against the defendants because she cannot point to any conduct by either of the defendants which is extreme or outrageous. Plaintiff may point to Defendants Maloney's alleged racial comments as outrageous conduct. However, these comments, without a showing that she feared bodily harm, is insufficient to sustain a claim for intentional infliction of emotional distress. See Dawson, 346 Pa. Super. 357. Plaintiff has not presented any evidence that Defendant Maloney prepared any of the "offensive" cartons of which she complains. Thus, Plaintiff cannot sustain a case of action for intentional infliction of emotional distress against Defendant Maloney.

With regard to Defendant Pennridge, Plaintiff has not produced any evidence that Pennridge acted outrageously. The only actions that Pennridge took with regard to the Plaintiff related to her discipline and eventual termination. As previously discussed, these actions were justified and reasonable, and they cannot be considered outrageous. Accordingly, Plaintiff cannot sustain a cause of action for intentional infliction of emotional distress against Defendants Pennridge.

Accordingly, Defendants' Motion for Summary Judgment with regard to Plaintiff's claims for intentional infliction of emotional distress is appropriate.

## III.    CONCLUSION

Plaintiff has alleged that her former employer, Defendant Pennridge, and her former co-worker, Defendant Maloney, engaged in a course of conduct with regard to her employment, discipline, and termination so as to render them liable to her for a number of causes of action. Plaintiff has failed to produce evidence which would permit a finding that either of the defendants acted to discriminate against her as a result of her race or gender. Plaintiff's termination was a result of her inability to perform her job satisfactorily. Plaintiff has also alleged that Defendants engaged in a course of conduct which amounted to a hostile work environment but this charge is not supported by the facts of record. Plaintiff has alleged that Defendant Maloney defamed her, but the facts of record show that his statements were true. With regard to Plaintiff's claims for intentional infliction of emotional distress and wrongful discharge, Plaintiff has

failed to produce facts which prove essential elements of these causes of action.  Accordingly, Defendants

respectfully request that this Honorable Court grant Defendants' Motion for Summary Judgment and

dismiss Plaintiff's Second Amended Complaint on all counts.


Respectfully submitted,

**MARKS, O'NEILL, O'BRIEN
& COURTNEY, P.C.**

BY:      _____
**KEVIN J. O'BRIEN, ESQUIRE
TIMOTHY D. RAU, ESQUIRE**
ID Nos. 38393/84707
1880 JFK Blvd., Suite 1200
Philadelphia, PA 19103

**Attorneys for Defendants Pennridge
Regional Police Department and
Timothy Maloney**

**IN THE UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MADELINE CRUZ** | : | **CIVIL ACTION** |
|     **Plaintiff** | : | |
| **vs.** | : | |
| | : | **NO. 02-CV-4372** |
| **PENNRIDGE REGIONAL** | : | |
| **POLICE DEPARTMENT** | : | |
|     **and** | : | |
| **OFFICER TIMOTHY MALONEY** | : | |

## <u>ORDER</u>

    **AND NOW**, this     day of         2003, upon consideration of Defendants, Pennridge

Regional Police Department and Officer Timothy Maloney's Motion for Summary Judgment it is hereby

**ORDERED, ADJUDGED** and **DECREED** that its Motion for Summary Judgment be **GRANTED** and

Defendants, Pennridge Regional Police Department and Officer Timothy Maloney are dismissed from this case

with prejudice.

                                           **BY THE COURT:**

                                        _____

                                                        **J.**

**IN THE UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MADELINE CRUZ** | : | **CIVIL ACTION** |
|     **Plaintiff** | : | |
| **vs.** | : | |
| | : | **NO. 02-CV-4372** |
| **PENNRIDGE REGIONAL** | : | |
| **POLICE DEPARTMENT** | : | |
|    **and** | : | |
| **OFFICER TIMOTHY MALONEY** | : | |

<u>**CERTIFICATE OF SERVICE**</u>

    I, Timothy D. Rau, hereby certify and state that a true and correct copy of Defendants' Motion for

Summary Judgment has been forwarded to counsel of record listed below by regular, first class postage pre-

paid mail.

J. Bradley McDermott, Esquire
FELDMAN & PINTO, P.C.
1604 Locust Street, 2R
Philadelphia, PA   19103

                                                 _____

                                                 Timothy D. Rau, Esquire

Date: _____